**Frederick W. SHOCKLEY, etc., Plaintiff-Appellant,**

**v.**

**Ralph M. SALLOWS, et al., Defendants,**

**Colonial Penn Insurance Company, Defendant-Appellee.**

No. 78–1480.

United States Court of Appeals, Fifth Circuit.

April 8, 1980.

Rehearing Denied May 2, 1980.

Charles R. Brackin, Lake Providence, La., for plaintiff-appellant.

Davenport, Files, Kelly & Marsh, William G. Kelly, Jr., Monroe, La., for Colonial Penn Ins. Co.

Before AINSWORTH and HENDER-SON, Circuit Judges, and HUNTER,* District Judge.

PER CURIAM:

The appeal in this diversity case concerns the rescission of an automobile liability insurance contract. Mrs. Judith Shockley, wife of Frederick Shockley and mother of two minor children, was killed in an automobile accident in Louisiana on November 7, 1975. On November 12, 1975 Shockley, individually and as natural tutor of the minor children, filed a wrongful death action against Ralph Sallows and his insurer, Colonial Penn Insurance Company. The action against the insurer was brought under the Louisiana Direct Action Statute (La. R.S. 22:655). The District Court held that the occurrence of the accident and the filing of the suit by plaintiff did not necessarily preclude the insurer from subsequently rescinding the policy.

█ The issue of the right to rescind was presented to the jury on an interrogatory: "Did Mr. Sallows conceal a material fact from Colonial Penn?"[1] The jury answered in the affirmative, and on the basis of that response a verdict was entered "that the policy of automobile liability insurance issued to Sallows by Colonial Penn on or about October 28, 1975, was null and void from its inception." Appellant does not attack the trial procedures, the instructions to the jury, the propriety of the interrogatories, or the sufficiency of the evidence upon which the jury based its verdict. The policy was issued to conform to the requirements of North Dakota. It was delivered to the insured in North Dakota. Both plaintiff and defendants argued that North Dakota law should determine the validity of the contract of insurance, and the district court so held. We agree. *Aetna Casualty & Surety Company v. Evers*, 590 F.2d 600 (5th Cir. 1979).

On this appeal plaintiff relies on two North Dakota statutes to buttress his argument that rescission was expressly prohibited under the facts of this case. These statutes are 39–16.1–11 6(a), North Dakota Century Code, which provides:

"6. Every motor vehicle liability policy shall be subject to the following provisions which need not be contained therein:

a) The liability of the insurance carrier with respect to the insurance required by this chapter shall become absolute whenever injury or damage covered by said motor vehicle liability policy occurs; * * *." (underscoring ours).

Also, 26–02–29, N.D.C.C., which provides:

Whenever a right to rescind a contract of insurance is given to the insurer by any provision of this title, such right may be exercised at any time previous to the commencement of an action on the contract.

The District Judge rejected the applicability of each statute and concluded that neither constituted a legal impediment to rescission. From that judgment Shockley appealed. We reverse.

## DID THE COMPANY HAVE THE RIGHT TO RESCIND THE POLICY AFTER THE ACCIDENT?

An evaluation of the company's contention that it had the right to rescind *ab initio* after the accident requires consideration of the Financial Responsibility Act of North

---

* District Judge of the Western District of Louisiana, sitting by designation.

1. The critical question in the application for insurance was:

    "Do you or any listed driver have a nervous disorder, uncorrected vision defect, crippled or missing limb, fainting spells, or any condition (or take medication) that may affect ability to drive safely? ___ Yes ___ No."

Sallows checked the box beside the "No." Sallows was crippled, having been a victim of polio as a youngster. He had driven for 30 years without an accident. Sallows testified that he answered the question as he did because he did not feel that his crippled limbs affected his ability to drive safely. He further testified that at no time did he intend to deceive Colonial Penn in any manner, or attempt to conceal anything from them. The jury obviously felt otherwise.

Dakota, 39–16 and 39–16.1 of the North Dakota Century Code.[2]

No useful purpose would be served by a verbatim recitation of these statutes, but a brief explanation is appropriate. The North Dakota financial responsibility laws consist of two chapters. Chapter 39–16, entitled Financial Responsibility of Owners and Operators, is composed of 37 subsections cited in the North Dakota Century Code as 39–16 through 39–16–37. Chapter 39–16.1, entitled Proof of Responsibility for the Future is composed of 11 subsections cited in the Code as 39–16.1 through 39–16.-1–11.

Section 39–16.1–11 6(a) provides that the liability of the insurance carrier becomes absolute whenever injury or damage covered by the motor vehicle liability policy occurs. Colonial Penn's position, which was essentially adopted by the District Court, is that the particular policy would be governed by the financial responsibility laws only when such policy was "certified" as such when the "insured" motorist was required to submit proof of financial responsibility.[3] 39–16.1–11 N.D.C.C. The Supreme Court of North Dakota, in *Hughes v. State Farm Mut. Auto. Ins. Co.,* 236 N.W.2d 870 (1976), carefully examined the "financial responsibility laws" in effect at the time of this accident. (Chapters 39–16 and 39–16.1, North Dakota Century Code).[4] The Court stated:

"The basic purpose for the Legislature's enactment of financial responsibility laws was to protect innocent victims of motor vehicle accidents from financial disaster. * * *

"We are not required, however, to base our conclusion solely on an application of the clear public policy expressed by the Legislature's enactment of the financial responsibility laws. We conclude that our laws are different from statutes commonly found in other jurisdictions, because the provisions dealing with financial responsibility for a driver's first accident (§ 39–16–05, N.D.C.C.) include as a basic point of reference the definition of a 'motor vehicle liability policy' contained in § 39–16.1–11.

\* \* \* \* \* \*

2. Standing alone, Chapter 39–16 imposes penalties against a motor vehicle owner or operator who is involved in an accident and does not subsequently establish that he is financially capable of responding in damages if he should thereafter be found liable for bodily injury or property damage sustained by any person in such accident. The principal sanctions imposed by § 39–16–05, N.D.C.C., however, will not apply, by the very terms of the statute itself, to an owner or operator having in effect an acceptable policy of liability insurance at the time of the person's first accident. Chapter 39–16.1, N.D.C.C., is designed to require a motor vehicle owner or operator who has already had an accident, or who has been convicted of certain traffic offenses, to establish proof of financial ability to respond in damages for any bodily injury or property damage which may occur as the result of *future* accidents. Chapter 39–16.1 sets out specific procedural requirements which an owner or operator must follow in establishing proof of financial responsibility, and also defines, in § 39–16.1–11, N.D.C.C., the type of insurance coverage which must be carried by the owner or operator to comply with requirements of Chapter 39–16.1. *See Hughes v. State Farm Mutual Auto. Insurance Co.,* 236 N.W.2d 870, 880 (N.D.1976).

3. Defendant accurately cites Louisiana cases (decided prior to 1967) for the proposition that a voluntary automobile liability policy which is not given as proof of financial responsibility is not affected by the provisions of a financial responsibility statute. These cases reflect the Louisiana law which at that time did not require anyone to carry liability insurance of any type in order to operate a vehicle on the highways of the state until after he had first had an accident and thereby been brought within the application of the Act (LSA–R.S. 32:900). In 1977 the Louisiana Legislature enacted a compulsory motor vehicle liability statute and it is certainly questionable whether a policy of automobile liability insurance issued pursuant to that statute can ever be held void *ab initio* after injury covered by the policy occurs. Defendant also cites the North Dakota case of *Farmers Insurance Exchange v. Nagle,* 190 N.W.2d 758, as authority for the proposition that an insurer may rescind for misrepresentation after the occurrence of the accident. This 1971 decision did not involve North Dakota's financial responsibility laws.

4. This authority was not cited in the appellate briefs and we presume was not called to the attention of the district judge.

"Having in mind such rule, as well as the public policy hereinbefore discussed, we conclude that the 'Conformity Clause' in the insurance policy   *   *   *, although somewhat artfully drawn with an apparent intention to restrict coverage as much as possible, is a sufficient basis on which to hold that such a clause does indeed warrant that the policy in question, whether 'certified' or not, complies with any applicable financial responsibility laws.   .   .   .   We further conclude that the certification prerequisite set forth in the Conformity Clause refers only to certification under Chapter 39–16.1, N.D.C.C., and that such certification is not required under Chapter 39–16, N.D.C.C."

█ It is agreed that the financial responsibility laws are applicable to a policy issued and certified under 39–16.1. We interpret *Hughes* as authority for the proposition that all automobile liability contracts in North Dakota, whether or not "certified," are controlled by the Financial Responsibility Act, provided that the policies purchased voluntarily afford substantially the same coverage as do policies issued in conformity with the mandatory requirements of 39–16.-1.

█ The policy in the instant case afforded substantially the same coverage as do policies issued in conformity with the mandatory requirements of 39–16.1. The policy here was obviously intended to permit the owner who was involved in the accident to exempt himself from the provisions of 39–16–05. By its very terms the policy purports to comply with any state "financial responsibility laws," when applicable, although the language of the clause is couched in terms of future financial responsibility, and purports to operate only when certified by the insurance company as proof of financial responsibility. The policy issued by Colonial Penn contains what is commonly referred to as a "Conformity Clause" which warrants to the policyholder that under certain conditions, the policy is in compliance with and conforms to the requirements of the state's financial respon-

sibility laws. The language utilized in the instant policy's "Conformity Clause" is almost identical to that contained in *Hughes*, 236 N.W.2d 870 at 877.

The defense which the company here asserts—misrepresentation in applying for the policy—is different from that held unavailable in *Hughes*. However, the public policy of North Dakota as there enunciated by its Supreme Court, and the broad construction placed upon its financial responsibility laws, convinces us that the courts of North Dakota would hold that the company's liability to Sallows under the policy became absolute upon the occurrence of the accident which resulted in the death of Mrs. Shockley, notwithstanding the company's subsequent discovery of Sallows' misrepresentation of a material fact in applying for the policy. The policy in the instant case is governed by the financial responsibility laws of North Dakota and cannot be voided after the accident occurred.

## DID THE DIRECT ACTION SUIT AGAINST THE INSURER CONSTITUTE AN ACTION ON THE INSURANCE CONTRACT?

█ If the answer to our inquiry is "yes", then the effort to rescind after the commencement of that action is barred under the statute. 26–02–29 N.C. Century Code. The District Court rejected this contention, pointing out that an action on the contract in North Dakota can occur only after the liability of the insured has been fixed by final judgment or compromise. Contrary to this contractual "no action" clause, the Louisiana Direct Action Statute permits injured persons to sue a liability insurer before such final determination. As to injuries occurring in Louisiana, one provision of the statute permits the direct suit on the insurance contract, even though that contract is written in another state and contains a clause forbidding such direct actions. *Watson v. Employers' Liability Assurance Corp.*, 348 U.S. 66, 75 S.Ct. 166, 99 L.Ed. 74 (1955); *Webb v. Zurich Insurance Co.*, 251 La. 558, 588, 205 So.2d 398 (1967); *Talbot v. Allstate Insurance Co.*, 76 So.2d 76 (La.App.1955). The statute is explicit:

"* * * The injured person or his or her survivors or heirs hereinabove referred to, at their option, shall have a right of direct action against the insurer within the terms and limits of the policy; and such action may be brought against the insurer alone, or against both the insured and insurer jointly and in solido, * * *. This right of direct action shall exist whether the policy of insurance sued upon was written or delivered in the State of Louisiana or not and whether or not such policy contains a provision forbidding such direct action, provided the accident or injury occurred within the State of Louisiana." L.R.S. 22:655 (underscoring ours).

This right of action has been characterized as procedural for some purposes and substantive for others. As to impairment of contract obligations, it is deemed procedural or remedial. *Bouis v. Aetna Casualty & Surety Co.*, 91 F.Supp. 954 (W.D.La.1950); *Hudson v. Georgia Casualty Co.*, 57 F.2d 757 (W.D.La.1931). It is substantive in the sense that a federal court in Louisiana will permit direct actions where jurisdiction is based on diversity. *E. g., Lewis v. Manufacturers Casualty Insurance Co.*, 107 F.Supp. 465 (W.D.La.1952). The action may be brought against the insurer alone or against both the insured and insurer jointly and in solido. The Louisiana Supreme Court has construed this to impose joint and solidary liability on insurer and insured. *See, e. g., Shaw v. New York Tire and Marine Underwriters, Inc.*, 1968, 252 La. 635, 212 So.2d 416; *Fulton v. White Cab Co.*, 305 F.Supp. 1333 (E.D.La.1969); *Written v. Travelers Indemnity Co.*, 304 So.2d 715 (La.App.1974).

There are two obligors—the tort feasor and the insurer—liable to the plaintiff for the same damage, at least up to the policy limits. The fact that one is an obligor in tort, and the other as a result of its contract, is of no moment. Both are obligated for the same debt. The liability of the insurer arises because of its contract. The liability of the insured emanates from his delictual responsibility for his negligent acts. *MidSouth Insurance Company v. Lewis*, 236 F.Supp. 739 (D.C.1964), *aff'd.* 358 F.2d 887; *Davies v. Consolidated Underwriters*, 1942, 199 La. 459, 6 So.2d 351.

Defendant insists that there was no "privity" between the insurer and the plaintiff. When "privity" was a talismanic word, courts recognized that an enforceable right in a third party beneficiary might be created by statute. That is precisely what the Louisiana Legislature did. The statute, by its terms, is a part of the policy and creates a contractual relationship which inures to the benefit of any and every person who might be negligently injured by the insured as completely as if such injured person had been specifically named in the policy. *Dixon v. Shockley*, La.App., 356 So.2d 96 (1978).

We summarize our holding. The Louisiana Direct Action doctrine encompasses the principle that an injured claimant has standing to sue the insurer on the contract as a third party beneficiary of that contract. *Continental Casualty Company v. Quebedeaux*, 234 F.2d 241 (5th Cir. 1956); *Davies v. Consolidated Underwriters*, 199 La. 459, 6 So.2d 351 (1942). The rights of a third party beneficiary spring from the contract and are determined by contract laws. *See* Restatement of Contracts §§ 142, 143; Restatement of Contracts 2d § 142 (Tent. Draft No. 3, 1967).[5]

**5.** Appellee relies on *Reeves v. Globe Indemnity Co.*, 182 La. 905, 162 So. 724 (1935). There, the Louisiana Supreme Court held that for purposes of appellate jurisdiction, a direct action against a liability insurer was an action for personal injuries and not contractual in nature. The Court reached this conclusion based on a now repealed provision in the 1921 Louisiana Constitution: "It [the Supreme Court] shall have appellate jurisdiction in civil suits * * * except in suits for damages for physical injuries to, or for the death of a person * * *." La.Const. of 1921 Art. 7, § 10 (now repealed). This case was decided prior to the amendment of the Direct Action Statute in 1950, which provision declared the right of action exists whether or not the policy sued upon was written or delivered in the State, or whether or not the policy contained a provision precluding direct action, "providing the accident occurred in

■ The suit against Colonial Penn constituted a suit on its contract, and any effort to rescind that contract after the commencement of the action must necessarily fail. N.D.Cent. Code 26–02–29.

We conclude that Sections 26–12–13 through 26–02–29 of the North Dakota statutes, by their terms, provide for a rescission of a contract of liability automobile insurance. . To this rule North Dakota law provides two exceptions. (39–16.1–11 6(a) and 26–02–29). Both exceptions are applicable here. Since the District Court reached a contrary conclusion, its judgment is REVERSED, and judgment should be entered in favor of plaintiff, under the terms of the agreement.

Louisiana." It was not until 1956 that the Louisiana Legislature added a second amend-

ment relating to the intent and purpose of the section.