Steven R. RICHARD, Plaintiff,

v.

Norval K. FLIFLET and Daniel Bye, Defendants.

and

Norval K. FLIFLET, Defendant, Third-Party Plaintiff and Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Third-Party Defendant and Appellee.

Civ. No. 10814.

Supreme Court of North Dakota.

June 27, 1985.

O'Grady, Morley & Morley, Grand Forks, for defendant, third-party plaintiff and appellant Norval K. Fliflet; argued by Michael J. Morley, Grand Forks.

Vogel, Brantner, Kelly, Knutson, Weir & Bye, Fargo, for third-party defendant and appellee State Farm Mut. Auto. Ins. Co.; argued by Harlan G. Fuglesten, Fargo.

ERICKSTAD, Chief Justice.

The defendant and third-party plaintiff, Norval K. Fliflet, appeals from a district court judgment dismissing his action against the third-party defendant, State Farm Mutual Automobile Insurance Company (State Farm), and ordering him to pay the plaintiff, Steven R. Richard, $1,100 in damages. We reverse.

State Farm and Fliflet stipulated to the following facts:

"1. On January 7, 1983, Norval Fliflet, of Hannaford, North Dakota, was driving a 1974 Plymouth Fury III automobile owned by his brother-in-law, Daniel Bye, also of Hannaford, when it was involved in an accident in Fargo, North Dakota with a vehicle owned and driven by Steven Richard of Mapleton, North Dakota.

"2. At the time of the accident there existed an insurance policy issued by State Farm to Merlin Lende of Cooperstown, for the 1974 Plymouth Fury III. A true and correct copy of this policy and the application for this policy are attached hereto marked Exhibit 1 and 2 respectively. This policy was purchased by Mr. Lende for a coverage period from November 15, 1982 to May 15, 1983. A premium of $62.42 was paid for this insurance.

"3. At the time Merlin Lende made application for this insurance he represented that he owned the vehicle. However, the true owner of the vehicle at all times material to this lawsuit was Daniel Bye.

"4. When the accident in question occurred on January 7, 1983, State Farm was unaware that Merlin Lende had no ownership interest in the vehicle. When State Farm first learned of this fact following the accident, it immediately rescinded Mr. Lende's insurance policy, returned his entire premium, and denied liability coverage for the accident.

"5. In February, 1983, Steven Richard instituted a lawsuit for damages in the amount of Two Thousand and no/100 Dollars ($2,000.00) against Norval Fliflet and Daniel Bye.

"6. At the time of the accident in question, Norval Fliflet had in force and effect an automobile insurance policy with Dairyland Insurance Company covering and insuring a 1970 Plymouth two

door automobile owned by Norval Fliflet. That car insured by Dairyland Insurance Company was not involved in the accident of January 7, 1983. Dairyland Insurance Company is providing a defense to Norval Fliflet under that policy, because State Farm has refused to provide him a defense. A true and correct copy of this insurance policy is attached hereto and marked Exhibit 3.

"7. On June 7, 1983, Norval Fliflet served a Third Party Summons and Complaint on State Farm claiming a right to indemnification by virtue of State Farm's obligations under the insurance policy issued to Mr. Lende. State Farm filed an Answer denying liability on the basis that the contract of insurance on the 1974 Plymouth Fury III was rescinded on the basis of Mr. Lende's misrepresentation of ownership and/or concealment of a material fact."

Richard's action against Fliflet and Bye was settled for $1,100, with an agreement that the insurance company obligated to provide coverage for the accident, either State Farm or Dairyland, would pay Richard. Fliflet's third-party action was submitted to the district court on the stipulated facts. The district court concluded that State Farm properly rescinded the insurance policy issued to Lende on the Plymouth Fury III because he misrepresented a fact material to the risk and because the policy was not issued pursuant to the requirements of Chapter 39–16.1, N.D.C.C. The court concluded that Dairyland was obligated to pay the $1,100 settlement to Richard. A judgment dismissing Fliflet's third-party complaint against State Farm was entered, and he appealed.

1. Section 39–16.1–11(1) provides:

"1. A 'motor vehicle liability policy' as said term is used in this chapter means an owner's or an operator's policy of liability insurance, certified as provided in sections 39–16.1–09 and 39–16.1–10 as proof of financial responsibility, and issued, except as otherwise provided in section 39–16.1–10, by an insurance carrier duly authorized to transact business in this state, to or for the benefit of the person named therein as insured."

2. Section 39–16–05, N.D.C.C., provides:

The basic issue presented by this appeal is whether or not State Farm could rescind the insurance policy issued to Lende on the 1974 Plymouth Fury III after the accident on the basis of his material misrepresentation of ownership of the automobile. We conclude that it could not so rescind.

Fliflet contends that Section 39–16.1–11(6)(a), N.D.C.C., applies to all motor vehicle liability policies and prevents State Farm from rescinding the policy issued to Lende on the Fury III after the accident. That section provides:

"6. Every motor vehicle liability policy shall be subject to the following provisions which need not be contained therein:

a. The liability of the insurance carrier with respect to the insurance required by this chapter shall become absolute whenever injury or damage covered by said motor vehicle liability policy occurs; said policy may not be canceled or annulled as to such liability by any agreement between the insurance carrier and the insured after the occurrence of the injury or damage; no statement made by the insured or on his behalf and no violation of said policy shall defeat or void said policy."

State Farm contends that Section 39–16.1–11(6) applies only to motor vehicle liability policies certified as proof of future financial responsibility under Chapter 39–16.1, N.D.C.C.,[1] and does not apply to the facts of this case because the policy was voluntarily purchased to avoid the sanctions of Section 39–16–05, N.D.C.C.,[2] and

"*39–16–05. Suspension of license and when not applicable.* The commissioner, within sixty days after the receipt of a report of a motor vehicle accident within this state which has resulted in bodily injury or death, or damage to the property of any one person in excess of four hundred dollars, shall suspend the license of each driver of each vehicle in any manner involved in such accident, and if such driver is a nonresident, the commissioner shall suspend the driver's privilege of operating a motor vehicle within this state unless such driver shall deposit security as provided

was not certified as proof of future financial responsibility.

State Farm also asserts that the application of Chapter 39–16.1, N.D.C.C., is limited by Section 39–16.1–01, N.D.C.C.,[3] to those individuals who have been previously convicted of, or forfeited bail for, violating certain motor vehicle laws or who have failed to pay judgments upon causes of

action arising from the ownership, maintenance, or use of registered motor vehicles. State Farm contends that those individuals manifest a greater likelihood of committing fraud than non-members of the class, and consequently, the Legislature reasonably determined that it was appropriate to not allow rescission if the insurance policy was purchased as proof of financial responsibility for the future. State Farm also asserts

in sections 39–16–09 and 39–16–10 in a sum which shall be sufficient in the judgment of the commissioner to satisfy any judgment or judgments for damages resulting from such accident as may be recovered against such driver, provided that notice of such suspension and opportunity for hearing shall be sent by the commissioner to such driver not less than ten days prior to the effective date of such suspension and shall state the amount required as security. However, if a driver, either resident or nonresident, involved in such accident purchases a policy of insurance with at least the amount of coverage required by this section, and files proof and satisfies financial responsibility requirements thereof with the commissioner, that driver shall be allowed to retain his license or privilege until such time as the driver has accepted responsibility for the accident or agreed to a settlement of claims arising from the accident or until a court of this state has determined that the driver was negligent or responsible for the accident in whole or in part. If the driver is found negligent or responsible for the accident, in whole or in part, his license or privilege shall be suspended and shall not be returned until the driver complies with the provisions of this chapter. This section shall not apply under the conditions stated in section 39–16–06, or:

1. To a driver, if he is the owner of the motor vehicle involved in the accident and had in effect at the time of such accident an automobile liability policy with respect to the motor vehicle involved in such accident, affording substantially the same coverage as is required for proof of financial responsibility under chapter 39–16.1.

2. To a driver, if not the owner of such motor vehicle, if there was in effect at the time of such accident an automobile liability policy or bond with respect to his operation of motor vehicle, affording substantially the same coverage as required for proof of financial responsibility under chapter 39–16.1.

3. To a driver, if the liability of such driver for damages resulting from such accident is, in the judgment of the commissioner, covered by any other form of liability insurance policy or bond or certificate of self-insurance under section 39–16–32.

"No such policy or bond shall be effective under this section unless by an insurance carrier or surety company authorized to do business in this state, except that if such motor vehicle was not registered in the state, or was a motor vehicle which was registered elsewhere than in this state at the effective date of the policy or bond, or the most recent renewal thereof, such policy or bond shall not be effective under this section unless the insurance carrier or surety company, if not authorized to do business in this state, shall execute a power of attorney authorizing the commissioner to accept service, on its behalf, of notice or process in any action upon such policy or bond arising out of such accident; provided, every such policy or bond is subject, if the accident has resulted in bodily injury or death, to a limit, exclusive of interest and costs, of not less than twenty-five thousand dollars because of bodily injury to or death of one person in any one accident, and, subject to said limit for one person, to a limit of not less than fifty thousand dollars because of bodily injury to or death of two or more persons in any one accident, and, if the accident has resulted in injury to or destruction of property to a limit of not less than ten thousand dollars because of injury to or destruction of property of others in any one accident. Upon receipt of notice of such accident, the insurance carrier or surety company which issued such policy or bond shall furnish for filing with the commissioner a written notice that such policy or bond was in effect at the time of such accident, or the department may rely upon the accuracy of the information and the required report of an accident as to the existence of insurance or a bond unless and until the department has reason to believe that the information is erroneous."

3. Section 39–16.1–01 provides:
"The provisions of this chapter requiring the deposit of proof of financial responsibility for the future, subject to certain exemptions, shall apply with respect to persons who have been convicted of or forfeited bail for certain offenses under motor vehicle laws or who have failed to pay judgments upon causes of action arising out of ownership, maintenance, or use of vehicles of a type subject to registration under the laws of this state."

that insurance companies are on notice to carefully check the background of individuals seeking proof of financial responsibility for the future because those individuals have previously demonstrated questionable reliability.

The resolution of the arguments raised by the parties requires a brief discussion of North Dakota's Financial Responsibility Laws contained in Chapters 39–16 [Financial Responsibility of Owners and Operators] and 39–16.1 [Proof of Financial Responsibility for the Future], N.D.C.C.[4] In *Hughes v. State Farm Mutual Automobile Insurance Company*, 236 N.W.2d 870, 880 (N.D.1975), we discussed the distinction between Chapters 39–16 and 39–16.1, N.D. C.C.:

"Standing alone, Chapter 39–16 is intended to impose penalties against a motor vehicle owner or operator who is involved in an accident and does not subsequently establish that he is financially capable of responding in damages if he should thereafter be found liable for bodily injury or property damage sustained by any person in such accident. The principal sanctions imposed by § 39–16–05, N.D.C.C., however, will not apply, by the very terms of the statute itself, to an owner or operator having in effect an acceptable policy of liability insurance at the time of the person's first accident. Chapter 39–16.1, N.D.C.C., is designed to require a motor vehicle owner or operator who has already had an accident, or who has been convicted of certain traffic offenses, to establish proof of financial ability to respond in damages for any

bodily injury or property damage which may occur as the result of *future* accidents. Chapter 39–16.1 sets out specific procedural requirements which an owner or operator must follow in establishing proof of financial responsibility, and also defines, in § 39–16.1–11, N.D.C.C., the type of insurance coverage which must be carried by the owner or operator to comply with the requirements of Chapter 39–16.1." [Emphasis in original.]

In *Hughes*, the insured's wife was injured while riding on a snowmobile with the insured. The dispositive issue in that case was whether a "household or family exclusion clause"[5] in a policy of liability insurance purchased to avoid the sanctions of Section 39–16–05, N.D.C.C., was valid. We held that the "household or family exclusion clause" violated public policy as expressed in our financial responsibility laws. *Hughes, supra,* 236 N.W.2d at 884.

Our decision in *Hughes* was based on several factors. We acknowledged that the Legislature's purpose in enacting our financial responsibility laws was to protect innocent victims of motor vehicle accidents from financial disaster. We specifically noted that the language of Section 39–16–05, N.D.C.C., required a motor vehicle owner or operator to have an automobile liability insurance policy in effect on the automobile involved in a driver's first accident which afforded "substantially the same coverage" as policies issued in conformity with the mandatory requirements of Chapter 39–16.1, N.D.C.C. Finally, we noted that a "Conformity Clause"[6] in the insur-

---

**4.** In 1967 the Legislature created Chapter 39–16.1, N.D.C.C., in the same House Bill which both amended Chapter 39–16, N.D.C.C., and repealed certain sections thereof, recodifying those sections in Chapter 39–16.1, N.D.C.C. [N.D. Session Laws 1967, Ch. 313 (H.B. 547)].

**5.** The "household or family exclusion clause" provided as follows:
"'EXCLUSIONS—SECTION 1
"'THIS INSURANCE DOES NOT APPLY UNDER:

. . . . .

"'(h) COVERAGE A, TO BODILY INJURY TO ANY INSURED OR ANY MEMBER OF THE FAMILY OF AN INSURED RESIDING IN

THE SAME HOUSEHOLD AS THE INSURED; . . .'" *Hughes, supra,* 236 N.W.2d at 877.

**6.** The "Conformity Clause" provided as follows:
"'FINANCIAL RESPONSIBILITY LAWS
"'When certified as proof of future financial responsibility under any motor vehicle financial responsibility law and while such proof is required during the policy period, this policy shall comply with such law if applicable, to the extent of the coverage and limits required thereby; but not in excess of the limits of liability stated in this policy. The insured agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the

ance policy provided a sufficient basis to hold that the policy complied with any applicable financial responsibility laws and that Section 39–16–05, N.D.C.C., was the applicable financial responsibility law.

We concluded that the "substantially the same coverage" language of Section 39–16–05, N.D.C.C., required an insurance company to include the same minimum limits of liability and omnibus coverage in motor vehicle liability insurance policies purchased voluntarily to avoid the sanctions of Section 39–16–05, N.D.C.C., as in policies issued and certified as proof of financial responsibility for the future. We further concluded that the following elements were essential to all motor vehicle liability insurance policies:

"1. Limits of liability of not less than ten thousand dollars because of bodily injury or death to one person in any one accident; twenty thousand dollars because of bodily injury or death to two or more persons in any one accident; and five thousand dollars because of injury to or destruction of property in any one accident; and

"2. Insuring the named insured and any other person driving said motor vehicle with the permission of the named insured; and

"3. Insuring such persons against loss from the liability *imposed by law for damages arising out of the ownership, maintenance or use of such insured motor vehicle* within the United States of America or the Dominion of Canada." [Emphasis in original.] *Hughes, supra*, 236 N.W.2d at 883.

We further stated:

"The only portions of Chapter 39–16.1 that have been effectively incorporated into § 39–16–05 are those portions of § 39–16.1–11 which define the coverage required in a liability insurance policy issued with respect to a motor vehicle owner or operator involved in an accident. The procedural requirements have

terms of this policy except for the agreement contained in this paragraph.' " *Hughes, supra,*

not been incorporated into Chapter 39–16, nor were they intended to be so incorporated.

\*     \*     \*     \*     \*     \*

"The only portions of Chapter 39–16.1 incorporated into § 39–16–05, and therefore applicable in this case, are those portions of subsections 1, 2 and 3 of § 39–16.1–11 which define the coverage required in a motor vehicle liability insurance policy. There is no certification requirement contained in Chapter 39–16, nor is there a provision which limits the insurance company's potential liability to a statutorily defined maximum. The only portion of § 39–16.1–11 applicable to this case is that portion of such section defining the *coverage* of a 'motor vehicle insurance policy'. Such coverage includes certain *minimum* limits of liability, plus the Omnibus Clause. By the policy's specific terms, the provisions contained in subsections 7 and 8 of § 39–16.1–11 are activated only when the policy is '*certified* as proof of *future* financial responsibility ... while such proof is required during the policy period [emphasis added]'." *Hughes, supra,* 236 N.W.2d at 885–886.

Our decision in *Hughes* did not address whether subsection 6 of Section 39–16.1–11 was incorporated into motor vehicle liability policies purchased voluntarily to avoid the sanctions of Section 39–16–05, N.D.C.C.

Fliflet contends that subsection 6 should be incorporated in Section 39–16–05 because there would be no "teeth" to the requirement that all persons operating motor vehicles have insurance in the amount required by Chapter 39–16.1, N.D.C.C., if an insurance company could rescind the policy after an accident occurred.

State Farm contends that subsection 6 does not describe the amount of coverage purchased, and therefore should not be incorporated into motor vehicle policies purchased voluntarily to avoid the sanctions of

236 N.W.2d at 877.

Section 39–16–05, N.D.C.C. State Farm points out that our decision in *Hughes* specifically did not incorporate Sections 39–16.-1–11(7) and (8), N.D.C.C.,[7] into motor vehicle policies purchased voluntarily to avoid the sanctions of Section 39–16–05, N.D.C.C.

■ In *Shockley v. Sallows*, 615 F.2d 233 (5th Cir.), *cert. denied*, 449 U.S. 838, 101 S.Ct. 113, 66 L.Ed.2d 44 (1980), the Fifth Circuit Court of Appeals dealt with a factual situation similar to the instant case. In *Shockley*, a diversity case involving the application of North Dakota law, the court interpreted our financial responsibility laws and particularly Section 39–16.1–11(6)(a), N.D.C.C., in light of *Hughes*. The court interpreted our decision in *Hughes* to stand for the proposition that all automobile liability contracts in North Dakota, whether or not certified, are controlled by the Financial Responsibility Act, provided the policies purchased voluntarily afford substantially the same coverage as policies issued in conformity with the mandatory requirements of Chapter 39–16.1, N.D.C.C. *Shockley, supra*, 615 F.2d at 237. The *Shockley* court concluded:

> "[T]he public policy of North Dakota as there enunciated by its Supreme Court, and the broad construction placed upon its financial responsibility laws, convinces us that the courts of North Dakota would hold that the company's liability to Sallows under the policy became absolute upon the occurrence of the accident which resulted in the death of Mrs. Shockley, notwithstanding the company's subsequent discovery of Sallows' misrepresentation of a material fact in applying for the policy. The policy in the instant case is governed by the financial responsibility laws of North Dakota and cannot be voided after the accident oc-

curred." *Shockley, supra*, 615 F.2d at 237.

We believe that the *Shockley* court's interpretation of our decision in *Hughes* and our financial responsibility laws is correct.

North Dakota law requires that no person shall drive a motor vehicle without a valid motor vehicle liability insurance policy in the amount required by Chapter 39–16.1, N.D.C.C. Section 39–08–20, N.D.C.C. The owner of a motor vehicle operated in this state must provide security for payment of basic no-fault benefits and the liabilities under the motor vehicle liability insurance. Section 26–41–04(1), N.D.C.C. The legislative declaration for our no-fault provisions provides, in part, that its purpose is "to require registrants of motor vehicles in this state to procure insurance covering legal liability arising out of ownership or operation of such motor vehicles." Section 26–41–02, N.D.C.C.

We also note Sections 26–02–32 through 26–02–41, N.D.C.C., deal with automobile liability insurance policies and provide for prospective cancellation of policies after the fulfillment of certain notice requirements which is consistent with the general scheme and purpose of our financial responsibility laws.

■ The overriding purpose of our financial responsibility laws is to protect innocent victims of motor vehicle accidents from financial disaster. This principle coincides with the concept of protecting innocent victims who are not in the position enjoyed by the contracting insurer to protect themselves against fraud or misrepresentation by the insured.

■ All motor vehicle liability policies used to satisfy the sanctions of Section

---

7. Section 39–16.1–11(7) and (8), N.D.C.C., provide:

"7. Any policy which grants the coverage required for a motor vehicle liability policy may also grant any lawful coverage in excess of or in addition to the coverage specified for a motor vehicle liability policy and such excess or additional coverage shall not be subject to the provisions of this chapter. With respect to a policy which grants such excess or addi-

tional coverage the term 'motor vehicle policy' shall apply only to that part of the coverage which is required by this section.

"8. Any motor vehicle liability policy may provide that the insured shall reimburse the insurance carrier for any payment the insurance carrier would not have been obligated to make under the terms of the policy except for the provisions of this chapter."

39–16–05, N.D.C.C., must contain the minimum limits and the same omnibus coverage required by Section 39–16.1–11, N.D.C.C. Otherwise the coverage would not be "substantially the same" as coverage required by Chapter 39–16.1, N.D.C.C., as that phrase is used in Section 39–16–05, N.D.C.C. In the instant case, the policy was purchased to avoid the sanctions of Section 39–16–05, N.D.C.C., and affords substantially the same coverage as policies issued in conformity with the requirements of Chapter 39–16.1, N.D.C.C. By the terms of the "conformity clause" the policy purports to comply with the State's financial responsibility laws.[8] We believe it would defeat the basic purpose of our financial responsibility laws if a policy with minimum limits and omnibus coverage is required by our laws for *all* motor vehicle liability policies, but that policy could be rescinded after an accident if it were purchased to avoid the sanctions of Section 39–16–05, N.D.C.C. We do not believe that result would afford "substantially the same" coverage required by Chapter 39–16.1, N.D.C.C., as that phrase is used in Section 39–16–05, N.D.C.C. If rescission were permitted after an accident, an innocent victim could suffer financial hardship. We do not believe the Legislature contemplated that result. Rather, the strong public policy of protecting innocent victims of motor vehicle accidents and our decision in *Hughes, supra,* leads us to conclude that Section 39–16.1–11(6)(a), N.D.C.C., is applicable to motor vehicle liability policies purchased to avoid the sanctions of Section 39–16–05, N.D.C.C.

■ We also conclude that because Section 39–16.1–11(6), N.D.C.C., is a specific provision relating to motor vehicle liability policies, that provision must prevail over the provisions of Chapter 26–02, N.D.C.C., generally applicable to insurance contracts.[9] Section 1–02–07, N.D.C.C.

Accordingly, the district court judgment is reversed and the case is remanded for entry of judgment in favor of Fliflet.

GIERKE and MESCHKE, JJ., concur.

PEDERSON, Surrogate Justice, sitting in place of LEVINE, J., disqualified.

PEDERSON, Surrogate Justice, concurring specially.

The Chief Justice correctly interprets what the majority of this court held in *Hughes v. State Farm Mut. Auto. Ins. Co.,* 236 N.W.2d 870 (N.D.1975). I did not agree with that majority view in 1975 and I still believe it was wrong. Never-the-less, the law is expounded in majority opinions,

---

8. The conformity clause in this case is almost identical to the conformity clause in *Hughes.*

9. Section 26–02–15, N.D.C.C., provides:
   "*26–02–15. Rescission for concealment.*—A concealment, whether intentional or unintentional, entitles the injured party to rescind a contract of insurance. An intentional and fraudulent omission on the part of one insured to communicate information of matters proving or tending to prove the falsity of a warranty entitles the insurer to rescind."
   Section 26–02–24, N.D.C.C., provides:
   "*26–02–24. False representations—Materiality and effect.*—A representation is false when the facts fail to correspond with its assertions or stipulations. If a representation is false in a material point, whether affirmative or promissory, the injured party is entitled to rescind the contract from the time when the representation becomes false, and the materiality of a representation is determined by the same rule which determines the materiality of a concealment."
   Section 26–02–25, N.D.C.C., provides:
   "*26–02–25. Misrepresentations—Determination of materiality—Effect.*—No oral or written misrepresentations made in the negotiation of a contract or policy of insurance by the insured or in his behalf shall be deemed material or shall defeat or avoid the policy or prevent its attaching unless such misrepresentation shall have been made with actual intent to deceive or unless the matter misrepresented increased the risk of loss."
   Section 26–02–29, N.D.C.C., provides:
   "*26–02–29. Modification of contract of insurance—Exercise of right of rescission.*—The provisions of this chapter apply to a modification of a contract of insurance as well as to its original formation. Whenever a right to rescind a contract of insurance is given to the insurer by any provision of this title, such right may be exercised at any time previous to the commencement of an action on the contract."

**536**

not dissents. The legislature, I thought, should have taken corrective action after this court's decision in 1975. It did not and as a consequence, we presume that it has concurred.

Why the liability insurance premiums have not been adjusted upward to cover the added exposure resulting from *Hughes v. State Farm*, I do not know. It would be difficult to argue that higher premiums are not justified.

VANDE WALLE, Justice, dissenting.

I respectfully dissent. It is conceded that the policy was purchased for the purpose of avoiding the sanctions of Section 39–16–05, N.D.C.C. It is also apparently conceded that the application for the insurance was falsified because the true owner of the vehicle, Bye, had a previous conviction for driving while intoxicated and the insurance premium would be higher if he applied for it in his own name.

This is a dispute between insurance companies and under the circumstances of the case I feel no compulsion to stretch the provisions of Section 39–16.1–11(6)(a), N.D. C.C., or extend the decision of this court in *Hughes v. State Farm Mut. Auto. Ins. Co.*, 236 N.W.2d 870 (N.D.1975), to policies of insurance issued for the purpose of avoiding the sanctions of Section 39–16–05, N.D. C.C. Although it may be contended that to not do so is inconsistent with *Hughes*, the decision in that case is based in part upon public policy. I seriously doubt it was the intent of the Legislature, and therefore the public policy of this State, to in any manner encourage the falsification of insurance applications. The summary in the majority opinion, at footnote 9, of the statutes which must be subverted to conclude otherwise, is sufficient to convince me that we should not so construe and apply the wording in Section 39–16.1–11(6)(a). If, indeed, I am wrong and that is the intent of the Legislature, and the public policy of this State, it must, at least for me, be stated in more direct terms.