United States Court of Appeals,

Fifth Circuit.

No. 93-3815.

FEDERAL DEPOSIT INSURANCE CORPORATION, as Manager of the Federal Savings & Loan Insurance Corporation Resolution Fund, Plaintiff-Appellant,

v.

Peter E. DUFFY and New England Insurance Company, Defendants-Appellees.

NEW ENGLAND INSURANCE COMPANY, Plaintiff-Appellee,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, as Manager of the Federal Savings & Loan Insurance Corporation Resolution Fund, Intervenor-Defendant-Appellant.

March 9, 1995.

Appeals from the United States District Court for the Eastern District of Louisiana.

Before SMITH and EMILIO M. GARZA, Circuit Judges, and STAGG,[1] District Judge.

TOM STAGG, District Judge:

The Federal Deposit Insurance Corporation ("FDIC") appeals from the district court's grant of summary judgment in favor of appellee, New England Insurance Company ("New England").  For the reasons set forth below, we affirm the judgment of the district court.

*FACTS*

I. PROCEDURAL HISTORY.

This case has a convoluted procedural history and has been

---

[1]District Judge of the Western District of Louisiana, sitting by designation.

ruled on by a panel of this court twice before on other aspects of the litigation. The decision now on appeal involves three rulings issued in two prior trials. The first ruling was in an action commenced on November 21, 1986 by the Federal Savings and Loan Insurance Corporation ("FSLIC") against John Mmahat, the law firm of Mmahat & Duffy, and New England Insurance Company. The firm of Mmahat & Duffy was composed of five partners—John Mmahat, Peter Duffy, Marvin Opotowsky, Vallerie Oxner, and Annabelle Walker, and two associates—Noel Vargas and N. Eleanor Graham. New England issued a professional liability policy to Mmahat & Duffy for the period during which the alleged wrongdoing occurred.

The FSLIC's suit alleged that John Mmahat and his law firm committed legal malpractice and breached fiduciary duties by advising Gulf Federal Savings and Loan ("Gulf Federal") to make loans in violation of federal regulations. There was evidence that Mmahat advised Gulf Federal to disregard federal law concerning limitations on loans to one borrower regulations, even after warnings by the Federal Home Loan Bank Board. The evidence at trial indicated that Mmahat encouraged these loans to generate fees for his firm. The jury found that Mmahat and Mmahat & Duffy had committed malpractice and breached fiduciary duties owed to Gulf Federal. Damages of $35 million were awarded.

The question of insurance coverage was reserved for the court, and the district court ruled on December 28, 1988 that the policy of insurance issued to Mmahat & Duffy by New England did not provide coverage for the $35 million judgment. That ruling was

2

based on an exclusion in the policy for any claim "that results in a final adjudication that any Insured has committed a dishonest, fraudulent or malicious act, error, omission or personal injury with deliberate purpose and intent." This court affirmed the district court's ruling in *FDIC v. Mmahat,* 907 F.2d 546 (5th Cir.1990).

The second ruling occurred several months later in an action in which the FDIC, as successor to the FSLIC, brought suit against Peter Duffy and New England, seeking to recover from Duffy his virile share of the $35 million judgment. The district court dismissed the suit *sua sponte* based on a finding of *res judicata.* The FDIC appealed that ruling, and a panel of this court reversed and remanded in *FDIC v. Mmahat,* 960 F.2d 1325 (5th Cir.1992). This court reasoned that in the subsequent suit against Duffy, the FDIC merely sought to collect an existing judgment in its favor. *Mmahat,* 960 F.2d at 1329. Accordingly, the suit did not require readjudication of the malpractice claim and thus was not barred by *res judicata.*

Following the remand, New England filed a motion for summary judgment, which was granted by the district court. That third ruling is now on appeal before this court.

II. THE DISTRICT COURT'S RULING AND THE INSURANCE POLICY.

The district court granted summary judgment based on four grounds: 1) the New England policy is void *ab initio* because of material misrepresentations of the risk; 2) the policy does not provide coverage for the judgment based on a "prior acts"

exclusion; 3) the FDIC has no standing to raise waiver as a defense in this case; and 4) there was no waiver by New England.

*A. THE DISTRICT COURT'S CONCLUSION THAT THE POLICY IS VOID AB INITIO*

The application for insurance answered by Mmahat & Duffy contained the following question:

> Is the proposed insured aware of any prior incident, act, error or omission which there is reason to suppose might fall within the scope of the proposed insurance?

Section III(E) of policy. Preceding the signature line of the application is the following paragraph:

> The applicant declares that to the best of his knowledge of all persons to be insured the statements set forth herein and in any attachments made hereto are true and no material facts have been suppressed or misstated.

The application defines "applicant" as "all Lawyers associated with the firm." New England successfully argued to the district court that the finding of legal malpractice and breach of fiduciary duty against Mmahat conclusively established that he was aware of "prior acts" which might fall within the scope of the New England policy. Therefore, a material misrepresentation was made when Mmahat & Duffy answered "no" to Section III(E).

*B. THE DISTRICT COURT'S FINDING THAT THE JUDGMENT WAS EXCLUDED FROM COVERAGE UNDER THE POLICY*

Alternatively, the district court found that coverage was excluded by Section I, subparagraph I(A)(2)(b)(ii) of the policy. This section was entitled "INSURING CLAUSES" and stated that the policy provided coverage for prior acts only if, prior to the commencement date of the policy, "the firm's management committee or governing body, howsoever designated, or any member thereof

4

designated in the application, had no reasonable basis to believe that any Insured had breached a professional duty." The district court concluded that Mmahat was on the management committee of the firm and was a partner designated in the application for coverage. Accordingly, his knowledge that he had breached a professional duty caused the judgment to be excluded from coverage.[2]

## C. THE DISTRICT COURT'S RULINGS ON WAIVER

The district court rejected the FDIC's argument that New England had waived its right to assert the defenses of material misrepresentation and non-coverage against Duffy. This conclusion was based on the district court's finding that Louisiana law holds that a third party not in privity to a contract lacks standing to argue that one of the parties to the contract waived its rights under the contract. Alternatively, the lower court found that New England's actions in this case did not constitute waiver.[3]

### ANALYSIS

## I. DOES THE FDIC HAVE STANDING TO RAISE THE ISSUE OF WAIVER?

We review the district court's award of summary judgment *de novo*. *MacDonald v. Monsanto Co.*, 27 F.3d 1021, 1023 (5th Cir.1994); *FDIC v. Myers,* 955 F.2d 348, 349 (5th Cir.1992).

The FDIC argued to the district court that New England had waived its defenses of material misrepresentation and exclusion

---

[2]The policy defined "insured" as Mmahat & Duffy and any employee, partner, officer, or director of the firm.

[3]As will be discussed later, we do not reach the issue of waiver and, accordingly, express no opinion with respect to the correctness of the district court's ruling on the issue.

from coverage. The district court reasoned that because the FDIC was not party to the insurance contract, it had no standing to raise the issue of waiver. In so finding, the court relied on the Louisiana Direct Action Statute and several cases. The court concluded that in limited cases of post-claim breaches of an insurance policy, an injured third party has standing to sue. The district court reasoned that because New England's defenses of material misrepresentation and exclusion under the policy rely on acts that occurred before the policy was entered into, there was no standing.

The district court analogized the situation to cases involving whether causes of action were available to third parties rather than whether a third party could argue that the insurer waived a defense to the policy. *New Zealand Ins. Co. v. Holloway,* 123 F.Supp. 642 (W.D.La.1954) merely found that material misrepresentations void the policy *ab initio,* even with respect to innocent third parties who have been injured. *Randall v. Lloyd's Underwriter's,* 602 So.2d 790 (La.App. 4th Cir.1992) concluded that a third party not in privity to the insurance policy could not maintain an action **in contract** against the insurance company. *Harrelson v. La. Pacific Corp.,* 434 So.2d 479 (La.App. 2d Cir.1983) similarly held that absent privity, an insurance company can not take advantage of a plaintiff's waiver of his rights against a separate insurance company. Finally, *Guillory v. Gulf South Beverages, Inc.,* 506 So.2d 181 (La.App. 5th Cir.1987) found that a third party could not obtain penalties and attorneys' fees from an

6

insurance company for arbitrary refusal to pay a claim. The court reasoned that the authority for an award of attorney's fees was a statutory provision that provided that the insured could obtain the fees.

Contrary to the foregoing situations, the Louisiana Direct Action Statute creates a right of action in favor of an injured third party against the insurer of the wrongdoer. La.R.S. 22:655 ("The injured person ... shall have a right of direct action against the insurer...."); *Shockley v. Sallows,* 615 F.2d 233, 238 (5th Cir.), *cert. denied,* 449 U.S. 838, 101 S.Ct. 113, 66 L.Ed.2d 44 (1980). The *Shockley* court stated that:

> Defendant insists that there was no "privity" between the insurer and the plaintiff. When "privity" was a talismanic word, courts recognized that an enforceable right in a third party beneficiary might be created by statute. That is precisely what the Louisiana Legislature did. The statute, by its terms, is a part of the policy and creates a contractual relationship which inures to the benefit of any and every person who might be negligently injured by the insured as completely as if such injured person had been specifically named in the policy.

*Shockley,* 615 F.2d at 238, *citing Dixon v. Shockley,* 356 So.2d 96 (La.App. 1st Cir.1978).

We conclude that the district court erred in finding that the FDIC did not have standing to raise the issues of waiver and misrepresentation. Accordingly, the judgment of the district court is reversed with respect to this issue.

II. WAS THERE A KNOWING WAIVER BY NEW ENGLAND?

Because the district court addressed the issue of whether New England had waived its rights under the policy, we address this issue. The FDIC argues that the handling of other claims by New

7

England operated as a waiver of its defenses to the policy.

Waiver is the "intentional relinquishment of a known right, power, or privilege." *Steptore v. Masco Constr. Co.,* 643 So.2d 1213, 1216 (La.1994); *See also Tate v. Charles Aquillard Ins. & Real Estate, Inc.,* 508 So.2d 1371, 1373 (La.1987). Reliable proof of waiver is necessary, and the burden is on the party claiming waiver to establish its existence. *Tate,* 508 So.2d at 1375. The district court concluded that the only acts by New England which would be relevant to waiver in this case were New England's handling of the Duffy claim. Both Duffy and Opotowsky testified in deposition that New England did not communicate to them that it was waiving any defenses. Moreover, New England did not provide a defense to Duffy. The district court also noted that in the previous *Mmahat* case, New England issued a letter that indicated that it was reserving its rights.

The FDIC argues that New England has been a party to this litigation since 1986, and that Mmahat was adjudged to have been dishonest in 1988. However, New England did not raise the defense that the policy was void until 1992, and it did not send a letter reserving its rights to assert that defense until 1993. The FDIC points to New England's statement in the second *Mmahat* trial that it was "putting an end to the litigation without reservation of any claims against any of its insureds, except as regards the appeal of the Phase I judgment." The FDIC also notes that New England has continued to pay claims under the policy, which is inconsistent with its position that the policy is void *ab initio.*

8

We agree with the district court that New England did not waive its defenses under the policy. Conduct in paying one claim under a policy does not prevent the insurer from raising defenses to the policy. *Monju v. Continental Cas. Co.*, 487 So.2d 729, 732 (La.App. 5th Cir.1986). La.R.S. 22:651 specifically provides that the following acts by an insurer do not constitute a waiver under any provision of a policy:

> (1) Acknowledgment of the receipt of notice of loss or claim under the policy.

> (2) Furnishing forms for reporting a loss or claim, for giving information relative thereto, or for making proof of loss, or receiving or acknowledging receipt of any such forms or proofs completed or incomplete.

> (3) Investigating any loss or claim under any policy or engaging in negotiations looking toward a possible settlement of any such loss or claim.

La.R.S. 22:651. In 1986 New England sent a letter reserving its rights under the policy. The FDIC seeks to make the distinction that the letter never stated that New England reserved its rights to void the policy, but we conclude that no such technical language is required. The insureds and the FDIC were aware that although New England was providing a defense for its insureds, it denied liability. The judgment of the district court is affirmed on this issue.

III. IS THE POLICY VOID *AB INITIO* ?

Under Louisiana law, an insurance policy is null from its inception if a material "oral or written misrepresentation or warranty [is] made in the negotiation of an insurance contract, by the insured in his behalf ... [if] the misrepresentation or

9

warranty is made with the intent to deceive" or if it would have affected the insurer's decision to proceed with the contract or with the rate. *Mazur v. Gaudet,* 826 F.Supp. 188, 193 (E.D.La.1992), *citing Estate of Borer v. Louisiana Health Service & Indemnity Co.,* 398 So.2d 1124, 1125 (La.1981); *see also* La.Rev.Stat. 22:619.[4]  The district court concluded that the insured's negative answer to Section III(E) of the insurance application regarding prior acts was a material misrepresentation made with the intent to deceive. *FDIC v. Duffy,* 835 F.Supp. 307, 314 (E.D.La.1993).  Specifically, the court noted that the jury verdict finding that Mmahat had committed malpractice and breached his fiduciary duty was binding upon the FDIC, and thus the FDIC was judicially estopped from arguing otherwise. *Id.*

In essence, the district court ruled that the jury verdict that Mmahat committed intentional acts to gain monetary advantage for his law firm negated the necessity of a factual inquiry on the issue of whether Mmahat intended to deceive.[5]  The district court

---

[4]La.R.S. 22:619(A) provides that:  "Except as provided in Subsection B of this Section and R.S. 22:692, and R.S. 22:692.1, no oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or void the contract or prevent it attaching, unless the misrepresentation or warranty is made with **the intent to deceive**."  (emphasis added).

[5]The district court also noted that Mmahat himself never signed the application.  The applicant for the insurance was the law firm of Mmahat & Duffy, and Marvin Opotowsky signed the application as a partner of the firm.  Section III(E), the question at issue, is phrased with respect to whether the "insured" is aware of any prior incident.  The applicant, by signing the form, declares "that to the best of his knowledge of all persons to be insured the statements set forth herein and in any attachments made hereto are true and no material facts have

stated that:

> The Court ... has no hesitancy under the undisputed facts in concluding that the misrepresentation regarding prior acts in the application for coverage by and on behalf of the partners of M & D was material to the risk, was false, and was made with intent to deceive for the purpose of securing insurance coverage. The Court is further of the opinion that based upon the undisputed facts, no reasonable trier of fact could conclude otherwise.
>
> ....
>
> The findings of intentional dishonest acts in the final judgment of the *Mmahat* case are binding upon the FDIC, so as to preclude it from relitigating issues resolved by that judgment. The doctrine of judicial estoppel precludes a party in a legal proceeding from asserting a position contrary to a position taken by the party in a prior proceeding.
>
> ....
>
> It would be most unusual if not unprecedented for a court to find that a person did not have actual knowledge of his own intentional dishonest acts. The law of this case is that Mmahat, an insured under the New England policy, prior to the application for professional liability coverage in November of 1985 committed *intentional* dishonest acts from which both he and M & D benefitted. This Court's prior findings of fact in *Mmahat* case lead to but one reasonable conclusion, that John Mmahat had knowledge of these prior "dishonest" acts, and thus, it was falsely represented in the application that the applicant (i.e., which by definition included all Lawyers associated with the firm) were not aware of any prior incident which there is a reason to suppose might fall within the scope of the proposed insurance (i.e., professional liability

been suppressed or misstated." The "applicant" is defined to include each lawyer associated with the firm. Opotowsky acknowledged that he understood that his signature was made on behalf of the entire firm. *FDIC v. Duffy,* 835 F.Supp. at 311, n. 9.

The district court cited *Mazur v. Gaudet,* 826 F.Supp. 188 (E.D.La.1992) for the conclusion that the insurance policy issued by New England should not be applied separately to each insured. Because there was no severability clause in the contract, the policy was void as to all insureds as opposed to those involved in wrongdoing. We adopt the district court's reasoning on the severability issue. *FDIC v. Duffy,* 835 F.Supp. at 315-16.

11

coverage).

*FDIC v. Duffy,* 835 F.Supp. at 314-15. The district court concluded that a finding that Mmahat was intentionally dishonest in his dealings with Gulf Federal was sufficient to establish as a matter of law that he intended to deceive New England by answering the "prior acts" question in the negative.

The FDIC argues that this ruling was erroneous, as the issue of whether an insured acted with the intent to deceive necessarily involves a factual inquiry. The FDIC argues that the proper question is whether Mmahat intended to deceive by answering Section III(E) in the negative.

The FDIC is correct that the jury did not find that Mmahat intended to deceive by filling out the application. But, as noted by the district court and a previous panel of the Fifth Circuit, the FDIC was not content to rest on a pure legal malpractice theory, instead choosing to pursue its theory of breach of fiduciary duty.[6] In so doing, it placed before the jury the question of whether Mmahat intentionally committed a dishonest act.

Under Louisiana law, a cause of action for breach of

---

[6]An earlier panel of this court noted that:

> But, as the district court correctly pointed out, FDIC "was not content to rest its case on whether Mmahat and his firm were guilty of malpractice solely because of improper advice.... Rather, [FDIC] included in its argument and evidentiary presentation to the jury the claim that Mmahat and his firm breached their fiduciary duties as lawyers because of actions taken to generate fees." We will not let FDIC undo what it has wrought.

*Mmahat,* 907 F.2d at 553.

12

fiduciary duty "requires proof of fraud, breach of trust, or an action outside the limits of the fiduciary's authority." *Gerdes v. Estate of Cush,* 953 F.2d 201, 205 (5th Cir.1992).

> The dominant characteristic of a fiduciary relationship is the confidence reposed by one in the other and [a person] occupying such a relationship can not further his own interests and enjoy the fruits of an advantage taken of such a relationship. He must make a full disclosure of all material facts surrounding the transaction that might affect the decision of his principals.

*Plaquemines Parish Comm'n Council v. Delta Development Co., Inc.,* 502 So.2d 1034, 1040 (La.1987). In this case, the jury found that Mmahat's failure to disclose that he was acting for the benefit of his law firm amounted to a breach of fiduciary duty. The definition of breach of fiduciary duty in Louisiana requires that the act constituting the breach be intentional. As noted by the district court, a person is necessarily aware of his intentional acts. Accordingly, we conclude that the jury verdict declaring that Mmahat breached his fiduciary duty is dispositive on the issue of intent to deceive.[7]

CONCLUSION.

After concluding that the New England policy was void *ab initio* because of material misrepresentations of the risk, the district court went on to find that a separate exclusion in the policy precluded coverage for the acts of Mmahat in this instance.

---

[7]We also note that this court has already affirmed the district court's finding that the verdict against Mmahat was excluded from coverage based on the exclusion in the policy for any claim "that results in a final adjudication that any Insured has committed a dishonest, fraudulent or malicious act, error, omission or personal injury with deliberate purpose and intent." *Mmahat,* 907 F.2d at 553.

13

The district court then found that the FDIC did not have standing to raise the issue of waiver, but that, in any event, there was no waiver by New England.  Because the first rationale for the district court's ruling is dispositive of this case, we need not address appellant's remaining arguments.  The ruling of the district court is AFFIRMED.